# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **RICKY SISK,** ) | | |
| Plaintiff ) | | |
| ) | | |
| v. ) | Civil Action No. 1:07cv00067 | |
| ) | **MEMORANDUM OPINION** | |
| ) | | |
| **MICHAEL J. ASTRUE,** ) | | |
| **Commissioner of Social Security,** ) | By: PAMELA MEADE SARGENT | |
| Defendant ) | United States Magistrate Judge | |

In this social security case, I vacate the final decision of the Commissioner denying benefits and remand the case to the ALJ for further findings consistent with this Memorandum Opinion.

*I. Background and Standard of Review*

Plaintiff, Ricky Sisk, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying the plaintiff's claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423, 1381 *et seq*. (West 2003 & Supp. 2008). Jurisdiction of this court is pursuant to 42 U.S.C.A. § 405(g) and § 1383(c)(3). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C.A. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through

-1-

application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Sisk filed an application for DIB[1] on June 7, 2005, alleging disability as of March 13, 2003, based on foot and hand injuries, the presence of a steel plate in his face and poor memory. (Record, ("R."), at 21, 41-43, 46.) The claim was denied initially and upon reconsideration. (R. at 20, 22, 28, 30-32.) Sisk then requested a hearing before an Administrative Law Judge, ("ALJ"), which was held on May 3, 2007, at which Sisk was represented by counsel. (R. at 33, 169-86.)

By decision dated June 20, 2007, the ALJ denied Sisk's claim. (R. at 14-19.) The ALJ found that Sisk met the disability insured status requirements of the Act for DIB purposes through September 30, 2006. (R. at 18.) The ALJ found that Sisk had not engaged in substantial gainful activity since March 13, 2003. (R. at 18.) The ALJ also found that the medical evidence established that Sisk suffered from severe impairments, namely a remote history of amputation of the right fourth toe and mild

---

[1] Sisk previously filed an application for DIB, but his claim was denied upon reconsideration on March 3, 2004. (R. at 53.) On this claim, the ALJ applied res judicata to the period on and before March 3, 2004. (R. at 15.)

-2-

stenosis at the C5-C6 level of the spine. (R. at 18.) The ALJ found that Sisk's allegations of disabling pain and other symptoms were not credible nor supported by the documentary evidence. (R. at 18.) The ALJ also found that Sisk did not suffer from a severe mental impairment. (R. at 18.) The ALJ found that Sisk had the residual functional capacity to perform light work.[2] (R. at 18.) Thus, the ALJ found that Sisk was unable to perform his past relevant work as a tile foreman, a laborer and a mechanic. (R. at 18.) Based on Sisk's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that jobs existed in significant numbers in the national economy that Sisk could perform, including those of a laborer, a food preparation worker, a server, a cleaner, a dishwasher, an arcade attendant and a counter helper. (R. at 18.) Therefore, the ALJ concluded that Sisk was not disabled as defined by the Act and was not eligible for benefits. (R. at 19.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2008).

After the ALJ issued his decision, Sisk pursued his administrative appeals, (R. at 9), but the Appeals Council denied his request for review. (R. at 5-7). Sisk then filed an action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2008). This case is before this court on the Commissioner's motion for summary judgment filed on April 21, 2008.[3]

---

[2]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2008).

[3]Sisk did not file a motion for summary judgment.

*II. Facts*

Sisk was born in 1962, (R. at 41), which classifies him as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c) (2008). Sisk has a sixth-grade education and past work experience as a tile layer, a mechanic and a construction worker. (R. at 51, 173.)

Sisk testified that, during the course of his employment as a tile foreman, he was required to supervise approximately four to five employees for up to two hours in a single workday. (R. at 57, 173.) He also indicated that he was required to frequently lift items weighing up to 50 pounds or more, and, at times, lift items weighing up to 100 pounds or more. (R. at 57.) Sisk stated that he could stand for one hour without interruption. (R. at 174.) He stated that he could sit for up to two hours without interruption. (R. at 174.) He stated that he could walk a quarter of a mile with rest periods. (R. at 174.) Sisk testified that he had been receiving counseling for his depression and nervousness at Stone Mountain Health Services. (R. at 181.) He testified that he had been prescribed Zoloft, but was unable to take it. (R. at 182.)

Cathy Sanders, a vocational expert, also was present and testified at Sisk's hearing before the ALJ. (R. at 183-85.) Sanders testified that Sisk's past relevant work as a tile foreman was considered heavy[4] and skilled, his work as a structural

---

[4]Heavy work involves lifting items weighing up to 100 pounds at a time with frequent lifting or carrying objects weighing up to 50 pounds. If an individual can perform heavy work, he also can perform sedentary, light and medium work. *See* 20 C.F.R. §§ 404.1567(d), 416.927(d) (2008).

-4-

laborer was considered heavy and semiskilled, as well as medium[5] and semiskilled, and his work as a mechanic was considered medium and skilled. (R. at 184.) Sanders was asked to consider a hypothetical individual of Sisk's age, education and work history and who could perform light and simple work, but who could not work around unprotected heights or dangerous equipment or machinery. (R. at 184.) Sanders testified that such an individual could perform the jobs of a food preparation server, a cleaner, a dishwasher, a nonconstruction laborer, an arcade attendant and a counter helper, jobs that existed in significant numbers in the regional and national economies. (R. at 184.) Sanders testified that an individual with the limitations set forth in psychologist Warren's report could not perform any jobs. (R. at 184-85.)

In rendering his decision, the ALJ reviewed records from Buchanan General Hospital; Dr. Sharat K. Narayanan, M.D.; Dr. Faisal Chaudhry, M.D.; Dr. Thomas Phillips, M.D., a state agency physician; Dr. Frank M. Johnson, M.D., a state agency physician; Joseph Leizer, Ph.D., a state agency psychologist; Brian E Warren, Ph.D., a licensed clinical psychologist; and Crystal Burke, L.C.S.W., a licensed clinical social worker.

On February 10, 2004, Sisk had x-rays performed at Buchanan General Hospital following a motor vehicle accident. (R. at 86-87.) The x-rays revealed mild degenerative changes at the C5, C6 and C7 levels of the spine with mild anterior subluxation of the C5 vertebra in relation to the C6 vertebra. (R. at 87.) The x-rays

---

[5]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can perform medium work, he also can perform sedentary and light work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2008).

of Sisk's lumbar spine were normal. (R. at 86.) Sisk's condition was deemed "chronic or less likely acute." (R. at 87.) Records indicate that Sisk complained of suffering from neck pain since March 17, 2004. (R. at 88-93.) He sought treatment from Brad Vandyke, P.C., a chiropractor, until July 13, 2004. (R. at 88-93.)

Sisk saw Dr. Sharat K. Narayanan, M.D., for complaints of neck pain, anxiety and lower back pain from March 2005 through July 2005. (R. at 99-112.) On March 3, 2005, Dr. Narayanan reported that Sisk was alert, awake and oriented. (R. at 105.) This same description also was noted on subsequent physical examinations in April, June and July of 2005. (R. at 99-103.) On April 4, 2005, Dr. Narayanan diagnosed chronic neck pain, chronic lower back pain, chronic recurrent headaches and anxiety disorder. (R. at 104.) An MRI of Sisk's cervical spine conducted in April 2005 showed mild spinal stenosis at the C5-C6 level due to angulation and subluxation of the C5-C6 level. (R. at 99, 116.)

On August 2, 2005, Sisk saw Dr. Faisal Chaudhry, M.D., for a consultative examination. (R. at 119-23.) Sisk reported that he had suffered several injuries in the past other than the motor vehicle accident in February of 2004. (R. at 119.) Sisk also alleged disability due to the presence of a plate in his face, foot and hand injuries and poor memory. (R. at 119.) Dr. Chaudhry noted that Sisk was "slight slow to react" but had "adequate response." (R. at 121.) Dr. Chaudhry indicated that Sisk was able to walk, sit and stand for approximately one hour periods for up to six hours in an eight-hour workday. (R. at 121.) He also indicated that Sisk was able to frequently lift items weighing up to 30 pounds and occasionally lift items weighing up to 40 pounds. (R. at 121-22.) Dr. Chaudhry noted that Sisk was not restricted by any

significant environmental or other limitations, and he opined that no assistive device was necessary. (R. at 122.) He also noted that Sisk showed adequate gait. (R. at 122.) In addition, he noted that Sisk had adequate memory and mental function and that he was able to perform fine and gross manipulations. (R. at 121.) Furthermore, Dr. Chaudhry indicated that Sisk was a viable candidate for vocational rehabilitation, if such rehabilitation was necessary. (R. at 122.)

On September 20, 2005, Dr. Thomas Phillips, M.D., a state agency physician, completed a physical residual functional capacity assessment indicating that Sisk could perform medium work. (R. at 124-30.) No postural, manipulative, visual or communicative limitations were noted. (R. at 126-27.) Dr. Phillips indicated that Sisk should avoid moderate exposure to hazards, such as machinery and heights. (R. at 127.) Sisk's allegations were deemed partially credible. (R. at 130.)

On December 27, 2005, Dr. Frank M. Johnson, M.D., a state agency physician, completed a physical residual functional capacity assessment indicating that Sisk had the residual functional capacity to perform medium work. (R. at 134-40.) No postural, manipulative, visual or communicative limitations were noted. (R. at 136-37.) Dr. Johnson indicated that Sisk should avoid moderate exposure to work hazards. (R. at 137.) He found Sisk's allegations only partially credible. (R. at 140.)

The same day, Joseph Leizer, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"). (R. at 141-53.) Leizer indicated that Sisk suffered from a nonsevere anxiety-related disorder. (R. at 141.) Leizer indicated that Sisk was mildly restricted in his activities of daily living, experienced mild

difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. (R. at 151.) He found that Sisk had experienced no episodes of decompensation. Leizer noted that Sisk should be able to perform the mental demands of all levels of work. (R. at 153.)

In February 2007, Sisk saw Crystal Burke, L.C.S.W., a licensed clinical social worker at Stone Mountain Health Services, for complaints of anxiety and depression. (R. at 165.) Burke noted that Sisk appeared alert and oriented. (R. at 165.) She also noted a depressed and anxious mood, poor eye contact and poor hygiene and grooming. (R. at 165.) Sisk expressed the existence of social, financial and health-related stressors. (R. at 165.) Sisk complained of emerging side affects from Zoloft, which he had been prescribed for approximately a year. (R. at 165.) Burke encouraged Sisk to discuss a trial of antidepressant medication with his primary care physician. (R. at 165.) On April 10, 2007, Sisk continued to complain of the side affects associated with Zoloft, which included stomach pain, and he also related that new health issues had emerged, including a recent diagnosis of Hepatitis B, as well as difficulty swallowing and breathing. (R. at 164.) Burke reported that Sisk's hygiene and grooming were poor. (R. at 164.) Sisk's mood was depressed, he had poor eye contact and his speech was monotone. (R. at 164.) Sisk stated that he had recently broken off his relationship with his girlfriend. (R. at 164.) Coping strategies for depression and anxiety were discussed. (R. at 164.)

On April 24, 2007, Sisk was examined by Brian E. Warren, Ph.D., a licensed clinical psychologist, at the request of Sisk's attorney. (R. at 154.) Warren noted that Sisk had a flat affect and a depressed mood. (R. at 155.) Sisk reported intermittent

suicidal thoughts with no serious intent. (R. at 155.) He denied symptoms of panic. (R. at 155-56.) Warren opined that, overall, Sisk's mental status showed a markedly depressed man with chronic pain problems. (R. at 156.) Warren administered the Wechsler Adult Intelligence Scale–Third Edition, ("WAIS-III"), on which Sisk obtained a full-scale IQ score of 64, a verbal IQ score of 66 and a performance IQ score of 67, placing him in the extremely low range of intellectual functioning. (R. at 156.) According to Warren, these values obtained from the tests indicated that Sisk's overall thinking abilities, verbal reasoning abilities, and nonverbal reasoning abilities "exceed those of only 1% of adults his age." (R. at 156.) Warren opined that Sisk's test scores were valid and reliable estimates of his abilities. (R. at 156.) Sisk's Personality Assessment Inventory showed an individual who was severely depressed due to anxiety, health issues and stress. (R. at 157.) Warren noted that Sisk perceived his problems as "a result of physical limitations and situational stress instead of having psychological causes." (R. at 157.) Warren also noted that Sisk's thought processes appeared "to be blocked, confused, and indecisive at times." (R. at 157.) Warren attributed these symptoms to stress and depression as opposed to a sign of psychosis. (R. at 157.) Warren indicated that Sisk was "a candidate for appropriate chemotherapy for depression, anxiety and pain control." (R. at 157.) Sisk's Pain Patient Profile showed severe symptoms of depression. (R. at 157.) Warren noted that Sisk's "suicide potential should be monitored despite his current denials of intention." (R. at 157.) He also noted that Sisk would have "difficulty maintaining mental alertness in any situation.... [therefore,].... he is a poor candidate for treatment and rehabilitation." (R. at 157.) Warren diagnosed major depressive disorder, single episode, severe, generalized anxiety disorder, moderate, and mental retardation. (R. at 158.)

Warren also completed a mental assessment indicating that Sisk had a severely limited, but not precluded, ability to understand, remember and carry out short, simple instructions, to interact appropriately with supervisors and co-workers and to respond appropriately to changes in a routine work setting. (R. at 159-60.) He also indicated that Sisk had no useful ability to understand, remember and carry out detailed instructions, to make judgments on simple, work-related decisions, to interact appropriately with the public and to respond appropriately to work pressures in a usual work setting. (R. at 159-60.)

## III. Analysis

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2008). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920 (2008). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2008).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the

claimant has the residual functional capability, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West Supp. 2008); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated June 20, 2007, the ALJ denied Sisk's claims. (R. at 14-19.) The ALJ found that the medical evidence established that Sisk suffered from severe impairments, namely a remote history of amputation of the right fourth toe and mild stenosis at the C5-C6 level of the spine. (R. at 18.) The ALJ also found that Sisk's allegations of disabling pain and other symptoms were not credible nor supported by the documentary evidence. (R. at 18.) The ALJ found that Sisk did not suffer from a severe mental impairment. (R. at 18.) The ALJ also found that Sisk had the residual functional capacity to perform light work. (R. at 18.) Thus, the ALJ found that Sisk was unable to perform his past relevant work as a tile foreman, a laborer and a mechanic. (R. at 18.) Based on Sisk's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that jobs existed in significant numbers in the national economy that Sisk could perform, including those of a laborer, a food preparation worker, a server, a cleaner, a dishwasher, an arcade attendant and a counter helper. (R. at 18.) Therefore, the ALJ concluded that Sisk was not disabled as defined by the Act and was not eligible for benefits. (R. at 19.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2008).

As stated above, it is the responsibility of the ALJ to weigh the evidence, including medical evidence, in order to resolve any conflicts which might appear

-11-

therein. *See Hays*, 907 F2.d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). "Thus it is not within the province of the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456. Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion based on the factors set for at 20 C.F.R. §§ 404.1527(d) and 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

In his brief, Sisk argues that the ALJ erred by failing to give proper weight to the evidence of record and by failing to fully and fairly develop the record concerning his mental impairments. (Brief In Support Of Plaintiff's Motion For Summary Judgment, ("Plaintiff's Brief"), at 5-8.) In particular, Sisk argues that the ALJ erred in rejecting the opinion of psychologist Warren. (Plaintiff's Brief at 5-8.)

In this case, the ALJ found that Sisk did not suffer from a severe mental impairment. (R. at 18.) The ALJ based this finding on his rejection of psychologist Warren's assessment, Sisk's minimal treatment history and the fact that Sisk's IQ scores were inconsistent with his past relevant work as a tile foreman and a mechanic. (R. at 17.) Based on my review of the record, I do not find that substantial evidence exists to support this finding or the ALJ's rejection of Warren's assessment.

The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a

-12-

claimant's ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521(a), 416.921(a) (2008). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. §§ 404.1521(b), 416.921(b) (2008). The Fourth Circuit held in *Evans v. Heckler*, that """[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.""" 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)) (citations omitted).

The ALJ had two mental assessments before him in this case. The first assessment was completed by state agency psychologist Leizer in December 2005. (R. at 141-53.) Leizer found that Sisk suffered from a nonsevere anxiety-related disorder. (R. at 141.) The next assessment is that of Warren dated April 24, 2007. (R. at 154-58.) Warren performed various tests, including the WAIS-III, which showed that Sisk had a verbal IQ score of 66, a performance IQ score of 67 and a full-scale IQ score of 64. (R. at 156.) Testing also indicated that Sisk was severely depressed. (R. at 157.) Based on this, Warren found that Sisk had a severely limited, but not precluded, to no useful ability to perform all work-related activities. (R. at 159-60.) In addition, Sisk had sought treatment from a licensed clinical social worker in February 2007 for complaints of anxiety and depression. (R. at 165.) The records, in addition to Warren's assessment, are dated after Leizer's assessment, indicating that

-13-

he did not have them before him in making his determination. The ALJ also noted that he based his finding of a nonsevere mental impairment upon the fact that Sisk's IQ scores were inconsistent with his previous work as a tile foreman and a mechanic. (R. at 17.)

In *Luckey v. U.S. Dep't Of Health & Human Servs.*, 890 F.2d 666, 668 (4th Cir. 1989), the court stated that "the [Commissioner] may not rely upon [claimant's] previous work history to prove nondisability where the section 12.05(c) criteria are met." Also in *Murphy v. Bowen*, 810 F.2d 433, 438 (4th Cir. 1987), the court stated that, "[w]hen a claimant for benefits satisfies the disability listings, benefits are due notwithstanding any prior efforts of the claimant to work despite the handicap." Under the rulings in *Luckey* and *Murphy*, the ALJ should not have rejected Warren's opinion on the basis that Sisk had previously engaged in skilled employment. In addition, as Sisk noted in his brief, the level of skill required for the work that he actually accomplished was unspecified. (Plaintiff's Brief at 7.) Furthermore, the results obtained from the administration of the WAIS-III indicated that Sisk's IQ, in the 60 to 70 range, (R. at 156), was within those values required under §12.05(c). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Furthermore, the record does not establish when Sisk's mental deficits manifested. Based on the above, I do not find that substantial evidence exists to support the ALJ's finding that Sisk does not suffer from a severe mental impairment.

## IV. Conclusion

For the foregoing reasons, the Commissioner's motion for summary judgment

will be denied.  The Commissioner's decision denying benefits will be vacated, and this case will be remanded to the Commissioner for further development and consideration of the severity and length of intellectual functioning issues that Sisk may possess.

 An appropriate order will be entered.

 DATED: This 21st day of July 2008.

       /s/ *Pamela Meade Sargent*
        UNITED STATES MAGISTRATE JUDGE